The next case is United States v. Joyner. Good morning, Your Honor. May I please support Michelle Barth on behalf of the appellant, Mr. Lonnie Joyner. On appeal, we are challenging the manner in which the district court calculated my client's criminal history points. And there are five convictions that we challenge on appeal. Four we claim are stale and one which was not a scorable offense because it was an unconditional discharge. But I'd like to begin our discussion today with prejudice because ultimately the government's principal argument is that it doesn't matter because Mr. Joyner's criminal history category would have been criminal history category six no matter what. But we have several reasons why the government's argument is unpersuasive in this regard. First, on this record, the district court made it clear several times that Mr. Joyner's prior criminal history points mattered and factored into its sentencing decision. We see that it mattered in the district court's statements at A77 to 78, A212 to 213, and A215. In fact- Let me interpret for just a second. I understood the district court to be focusing on, she said, it's important for me to know what he's convicted of and stressed the nature of the crime and the punishment or lack of punishment that was imposed. And it seems to me that's a little different from saying I have to know exactly how many points under the sentencing guidelines were accorded to him. I mean, I think she wanted to know and be correct about the criminal history category that he fell in. But is it fair to or is it wrong for me to understand her as focusing on what he was convicted of and wanting to make sure it wasn't his father who was convicted but it was the convictions that he had sustained himself? Your Honor is pointing to what the government emphasized in its brief, which is at A177 to 178. And in that particular section, the court is focused on whether the father had committed a particular offense or whether the defendant had committed a particular offense. And certainly the government couches those statements as simply the court making sure that it had the right person listed in the pre-sentence report. But what the government doesn't respond to are A212 through 213 and A215. Those are the additional statements. And frankly, those are the most important statements the court made where it tallies up what scores and what doesn't. And at the end of that finds that the criminal history is heavy. That's based on the number of points. And it's the criminal history that we all agree wouldn't change based on the recalculation that you propose. Is that right? Well, he would remain in criminal history category six. That is true. But the number of points and the fact that the court found it to be an impressive number of points, a heavy criminal history, those are all specific to its 3553 findings related to the nature and circumstances of Mr. Joyner. Is there any point in the transcript, I may have missed it, where the district court says based on the points you have a heavy criminal history? I mean, you've drawn our attention and you're absolutely correct. There are points in the transcript where she's saying she's calculating the points. But is there any, and my colleague has pointed us to the point, to the fact that she is interested in one point in making sure that he actually had been the perpetrator in one of the offenses and he wasn't. But is there any point where she talks specifically about points? Well, yes. She says that this one scores, this one does not score, that's eight. That's in the calculating, yes. But there's any point where she addresses how each, the calculation itself, whether it's 13 or 19, is important to her? Well, no. It wasn't brought to our attention that there was a problem with the number of criminal history points, so I don't know that she would volunteer that information necessarily. But she does at the end of telling all the points, which is not under the pre-sentence reports calculation section, but under Mr., we see at A211. The last thing I'm going to talk about is your history and characteristics. So it's part of that section, it's part of the actual 3553 factors that factored into her sentencing decision. So when she's tallying what counted and what didn't count, and we see here on A213, and thus we have a criminal history which is one of the most impressive ones I've ever seen. I didn't count the first one. She's referring to a prior conviction she didn't count. We're not counting a larceny, which sounds like we don't have the details. We're not counting this. We're not counting that. We're counting this. We're counting that. And then at the end, she sums it up. That's your criminal history, Mr. Joyner. That's quite a criminal history. So I don't think we can say, and that's at A215, about the middle of the page. Now, that's not addressed at all on the governance answering brief. Instead, the government's argument focuses solely on that first part, Judge Carney, that you pointed out, that simply there was a little mistake related to the problem for interrupting. In the pages you're just talking about, 213, 14, 15, she's reviewing the substance of all the offenses that he was convicted of. She's not just adding points. She's not just saying there's one here and one there. She's saying then there's the strangulation, then there's this, then there's that, and reviewing the substance of his actions over a lengthy period. And it seems to me that that's what she's summarizing and characterizing as being impressive. Is that incorrect? I see it as both, Your Honor. She's looking at what she's looking at closely and what she's not looking at closely, some of which we challenge for other reasons as being stale and so forth. But the number of points mattered. It seemed to matter to the court when she mentioned it earlier at the point in the transcript that you pointed out, Judge Carney, and then later in this very section, which is recounting an important 3553 factor, which is the defendant's personal history and characteristics. So I don't think that we can say with any certainty that in the context of all of the court's statements that the extent of his criminal history, and specifically what scored or didn't, didn't matter to the court when it determined his sentence. And finally, I did want to point out that this court has remanded to the district court for resentencing in very similar circumstances in a case in which, Judge Livingston, you were on the panel. It's United States v. Sanford. That's 814 Fed Appendix 649. The Penn site is 653, and that was decided in 2020. In Sanford, as you may recall, the district court calculated the appellant's points as 18 when it was actually 16. Now that didn't change the criminal history category at all. And even though Mr. Sanford would have fallen into the same criminal history category, whether this were with 16 or 18, the court remanded, because it was unclear that his sentence would have remained the same. Can I ask, because your time is elapsing, maybe you could address the government's argument that supposedly stale offenses are not in fact stale because we don't count from the date of the crime as alleged in the indictment, but from the commencement of the offense, and in this case the PSR would put that in April of 2016. Right. Yes, I'd be happy to do that. I also didn't get a chance to cover unconditional discharge, but if the court will allow me, I'll use some of my rebuttal time for that. While the PSR described relevant conduct that may have predated Mr. Joyner's gun possession, it was very specific. The gun alleged was a specific gun that was seized in September of 2017. It did not establish any dates for when such relevant conduct specifically occurred. Further, the testimony offered in court by the government's testifying witness did not establish the dates on which any relevant conduct occurred. Now, the PSR does indicate- The problem is, this is a, no objection is taken. And so there wasn't an opportunity for the record to be developed the way you would like it. That's not the court's fault. It's not the government's fault. There was no objection. I agree. Ideally, you know, I don't enjoy arguing a plain error appeal, but- Just maybe, you know, and this is, you know, when we're looking at this, and the question of the nature of the error, you know, it's an uphill fight for you to try and insist on these details, right? I agree. Ideally, the defense attorney would have objected at the time, and the court would make findings about such. We are in the sentencing context, and in the sentencing context, the plain error standard, while rigorous, is a little less rigorous than it would be if this were, say, a trial case. We don't have to undo an entire trial. Here, it would be just a matter of remanding to the district court so that the court could recalculate the criminal history, the points, and then decide whether or not the sentence would be the same. And did you want to use a minute of your rebuttal time now to address the unconditional discharge? Yes. So an unconditional, and I'll do that very quickly, an unconditional discharge is not a squarable disposition for at least two reasons. First, it is not a prior sentence for guidelines calculations. An unconditional discharge does not impose any cognizable sanction. It's not imprisonment. It's not a fine. It's not probation. It's not even time served. It's kind of a big nothing. It's not something that's recognized under the guidelines. Second, even if the unconditional discharge is somehow considered a prior sentence, assault in the third degree is similar to some of the listed offenses in 4A1.2C1, which are not scored. And if we look at the commentary to 4A1.2C, we have sort of a list of factors we go through. And when you go through each factor, and that's laid out in the opening brief, and I don't think was addressed very fully in the government's answering brief, but if you look at each of the factors, all of which weighs in favor of not scoring because it is so similar to those listed offenses, it is not categorically more serious than those offenses. May it please the Court. Rahul Kaly on behalf of the United States. Good morning. Mr. Joyner misconstrues the nature of relevant conduct and asserts that six criminal history points should be removed because the district court awarded those points based on convictions that took place in 2007. On the record, at Appendix 83, the defendant did not object to any facts in the PSR. So at this point, obviously, it's a plain error review. And Mr. Joyner has simply not shown why any of the perceived error had any impact on his sentence. With regard to counsel's arguments about what Judge Hall said when she was addressing the 3553A factors, all convictions, whether they score for guidelines purposes or not, are part of a person's criminal history. So when addressing history and characteristics, the court went through all of his prior convictions, which were detailed at length in the PSR and were not objected to either. In fact, turning to counsel's argument that the 2013 assault conviction should not count, under Sanders from this court, we look at the underlying actions. And the underlying actions that were not contested were that Mr. Joyner repeatedly pummeled and punched his paramour in the face. And that is the type of conduct that should be scored. It's not simply something like fair being, or a case like in Sanders where the paramour had instigated the conduct. Let me ask you a question. It seems still that, although I've been suggesting maybe otherwise with regard to criminal history, the points must have meant something to Judge Hall, because she did order the probation office to prepare a revised PSR, assigning zero points for the 2002 failure to appeal conviction, right? Yes, Your Honor. So why doesn't that suggest that maybe the correct calculation of points was of importance to her, and that she might have conceived differently of her sentencing obligations and the discretion that she had, had she calculated them correctly? I think what happened here was Mr. Joyner contested the fact that he has the same name as his father, and so therefore he claimed that this conviction from, I think, 2003, and I apologize, Your Honor, was his father's conviction. The court asked the probation officer at the time to find out if it was true, and the probation officer could not access their computer. The government also could not, at that time, had not been prepared for that argument and didn't have anything. So we agreed it would come off. But I think the concern there was that the judge was concerned about criminal history that belonged to somebody else, and that being taxed on the current defendant, and she wanted to make sure. So it's more fundamental error of assigning responsibility for it rather than point counting. Yes, Your Honor. All right, okay, thank you. But am I just making sure I understand your argument? Your primary argument is that there was no error, plain or otherwise, with regard to the calculation of the supposedly stale offenses because the relevant conduct, as based on the facts that were adopted and not objected to in the PSR, put that conduct back to April 2016. Yes, Your Honor. And for the other third-degree assault conviction, you're saying we're entitled to look at the defendant's underlying conduct when we figure out whether that conviction is petty or not, and the conduct tells us it's not petty. So, again, no error. Yes, Your Honor. The error has to be obvious, too, at the time. Yes, Your Honor. And so here you have the same criminal history either way. So in that sense, I guess your argument is it's not obvious. Yes, Your Honor. Unless you have any other questions. Thank you. I'm happy to address any additional questions. I didn't really get a full chance to talk about the unconditional discharge, so I'd like to focus on that. Maybe you could, I mean, is the government right that we should be considering the actual conduct involved? Is that the law? Well, that's not the only piece of it. That's the piece that the government focuses on. What we look at are, I believe it's five factors altogether. It's a comparison of punishments imposed for the listed versus the unlisted offense, in which case, in this case, it's third-degree criminal assault. The second one is the perceived seriousness of the offense, which is what the government focuses on. However, that is connected to as indicated by the level of punishment. Now, the sentencing court in Connecticut imposed a sentence of unconditional discharge. That is the least possible something that you can impose. It's not a conditional discharge. It's not probation. It's not imprisonment. It's not even a fine. So when we look at the perceived seriousness of the offense. Could that have reflected a change at heart with regard to the prosecution by the complaining witness? It could be any number of things. It could be the state of the evidence of the state's case. We have no idea. But if we're looking at it in terms of what is listed in the commentary related to that particular guideline, we have to tie the perceived seriousness of the offense as indicated by the level of punishment. And so the government has left that piece off. When we consider that piece, then this is not a serious offense and is right there with resisting arrest, failure to obey a police officer, criminal contempt. We look at the third factor, which is the elements of the offense. Similar to third degree assault, disorderly conduct, disturbing the peace, and resisting arrest are all similar because that each may involve conduct harming another person. The level of culpability involved, like some types of third degree assault, resisting arrest also involves violent conduct that most people would recognize as involving a significant degree of moral guilt. And that's from this court's decision in Morales, which is cited in both parties' briefs. And Morales was second degree harassment, and it noted that although disorderly conduct is often merely loud or obnoxious behavior or brawling among willing combatants in many jurisdictions, incidents of domestic violence are prosecuted as disorderly conduct. And then we move to the fifth factor, the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct. And once again, I point the court to the fact that this was an unconditional discharge. It wasn't subject to any term. It wasn't revocable. There was no punishment that we would recognize under the sentencing guidelines. And then lastly, there were no convictions for assaultive conduct after 2013 for Mr. Joyner. Thank you. Thank you both, and we will take a matter under advisement.